UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARK SAM, | } | |
| Plaintiff, | } | Civil Action, File No. |
| v | } | 15-cv-02780-JS-GRB |
| | } | |
| SELIP & STYLIANOUS, LLP F/K/A | } | |
| COHEN & SLAMOWITZ, LLP, | } | |
| MITCHELL SELIP, DAVID A. COHEN AND | } | |
| MITCHELL G. SLAMOWITZ, | } | |
| | } | |
| Defendants. | } | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO CHANGE VENUE**

**FIRST AND FOURTH CAUSE OF ACTION-FDCPA VIOLATIONS**

Nowhere does the Complaint (Exhibit A) allege that Hess, *supra* created any affirmative obligations or duties. Defendants' interpretation of the Complaint focuses only on paragraph 26. Paragraphs 23-25 contain substantive factual allegations not based on any kind of affirmative obligations and duties created by Hess, *supra*. Viewed in conjunction with paragraphs 23, 24 and 25, paragraph 26's language is based on what, as a result Hess, *supra*'s discussion of City Court Act § 213's meaning, Defendants knew about the validity of lawsuits filed in city courts and the resulting default judgments prior to Hess, *supra* and what Defendants knew or should have known after Hess, *supra*. Viewed in conjunction with paragraphs 23, 24 and 25, paragraph 26's language is not an allegation that Hess, *supra* created "affirmative obligations and duties upon Defendants".

This lawsuit does not allege that Defendants are liable because it did not comply with Hess, *supra*. This lawsuit alleges that Defendants as the losing party in Hess, *supra* going forward should understand that it had been misinterpreting City Court Act § 213 and has resulting obligations under the FDCPA to take actions or not take actions it would have taken based on what it now knows to be the correct interpretation of the law. If this court agrees with Defendants that the Complaint as

1

written is based only or too much on alleged "affirmative obligations and duties" created by <u>Hess</u>, *supra*, Plaintiff should be allowed to amend his Complaint.

<u>WHAT DEFENDANTS KNEW OR SHOULD HAVE KNOWN AS A RESULT OF HESS, *SUPRA*</u>

**T**he relevance of <u>Hess</u>, *supra* is not its specific holding but its detailed analysis of the meaning and effect City Court Act § 213 (Defendant is the successor-in-interest to the losing party in <u>Hess</u>, *supra*, Cohen & Slamowitz, LLP.).   The Second Circuit first quoted the venue provision from the Complaint Defendants had filed against Hess.   The key portion of the venue provision in the Complaint against Hess is the repeated reference to Hess' relationship to the county in which the action was brought.   The Second Circuit rejected Defendants' argument that the county is dispositive as to actions filed in city courts.   The venue provision in the Complaint against Plaintiff in this case has the same repeated reference to the relationship between the county of the party being sued to the county in which the action was brought.

The Second Circuit's decision in <u>Hess</u>, *supra*, has the following general discussion of City Court Act § 213:

> "We thus join the other courts that have considered this issue to conclude that the term "judicial district," as applied to state-court debt collection actions, must be defined in accordance with the judicial system of the state in which the debt collection action is brought."  <u>Hess</u>, *supra*, 637 F.3d at 121.
> " "The supreme court is a single court of statewide jurisdiction, with a branch in each county." David D. Siegel, *New York Practice* § 12 (4th ed. 2005) [hereinafter *N.Y. Practice* ]. New York's Civil Practice Law and Rules ("CPLR") contains venue requirements applicable to actions brought in the supreme court. These requirements support C & S's interpretation insofar as they generally provide that "the place of trial shall be in the county in which one of the parties resided when it was commenced" and, with respect to actions arising out "consumer credit transactions," provide that "the place of trial shall be the residence of a defendant." CPLR § 503(a), (f).[3]  C & S, however, did not sue Hess in the Onondaga County branch of the supreme court; rather, it brought suit in the city court for the City of Syracuse. Syracuse—like every city in New

York—has a city court, which is a court of limited original jurisdiction over, *inter alia*, civil actions involving $15,000 or less in monetary damages. *See* N.Y. Const. art. VI, § 17; N.Y. Uniform City Ct. Act § 202. While New York's Uniform City Court Act (the "UCCA") does not include any provisions that are specifically labeled as relating to "venue," the article of the UCCA entitled "jurisdiction" contains a section specifying requirements that the parties reside or do business within or near the city containing the court."  Hess, *supra*, 637 F.3d at 122.

"Similarly, Section 213 ensures that at least one of the parties has a territorial nexus to the city where the court is located."  Hess, *supra*, 637 F.3d at 124.

"Here, unlike the municipal subdistricts of an Illinois circuit court, the city courts within New York State's court system involve far more than a mere subdivision for administrative convenience of the court of general original jurisdiction. Unlike the orders governing the subdistricts in Newsom, the laws regarding actions brought in city courts set forth territorial limits on the authority of those courts and provide that suits failing to comply with those requirements may be dismissed. See UCCA § 213(d). And here, in contrast to Newsom, actions brought in a particular city's court may be transferred to another city or local court in the same or adjoining county that has jurisdiction over the matter only in very limited circumstances that are not present in this case."  Hess, *supra*, 637 F.3d at 127.

Most dispositive is the Second Circuit's discussion in two different places in Hess, *supra* of Defendants past and future practices in regard to its choice of which court in which to sue consumers.

" [7.] We observe that under the facts alleged here, C & S could have chosen to sue Hess in the town court for the Town of Clay and that such suit would not violate § 1692i. Each of New York's towns and villages has a local court, collectively referred to as "justice courts," with jurisdiction over civil claims involving money damages of $3000 or less. *See N.Y. Practice* § 22; N.Y. Uniform Just. Ct. Act § 202. Section 213 of the Uniform Justice Court Act ("UJCA") sets forth residency requirements analogous to those contained in the corresponding section of the UCCA, except that the UJCA refers to residence or business within a "municipality" rather than a city and does not cover residence in a municipality contiguous to where the justice court is located. The fee to file a complaint in a town court is only $20. UJCA § 1911(a)(1)."  Hess, *supra*, 637 F.3d at FN 7.

"To be clear, we take no position on whether, as the district court hypothesized, C & S's failure to identify the proper forum may have been an isolated and innocent error resulting from a lack of familiarity with

local practice. The record before us on this appeal from a Rule 12(b)(6) dismissal does not contain facts sufficient to arrive at any such conclusion. The FDCPA provides C & S with an opportunity to make such a showing in due course, as it exempts from liability a debt collector that "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). But this is an affirmative defense; "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector." *Ellis v. Solomon & Solomon, P. C.,* 591 F.3d 130, 135 (2d Cir.2010). Thus, the FDCPA sets forth the proper mechanism for taking account of the debt collector's assertion of a good faith mistake, and it is premature to determine whether C & S qualifies for this affirmative defense on the basis of the present record."   Hess, *supra*, 637 F.3d at 125.

This next to last quoted passage from the Hess, *supra* decision, in essence, if not expressly, invites Defendants to look at its overall practices in regard to the courts it uses going forward to sue consumers such as Hess and Plaintiff in the case at bar who could be sued in a city court.  Then, this last paragraph in essence, if not expressly, invites Defendants to look at its overall practices in regard to how it overall had been choosing which court to file lawsuits against consumers who it has sued in a city court.  If Defendants had engaged in the bona fide error analysis suggested by the Second Circuit, this clearly may have had an effect on the actions Defendants took regarding the Plaintiff in the case at bar.

The Complaint alleges that Mark Sam never waived his right to contest the jurisdiction of the Dunkirk City Court under City Court Act § 213; and therefore the judgment was void due to a lack of jurisdiction.  As regards the judgment being void as alleged see Casden v. Broadlake Corp., 263 N.Y.S.2d 345, 47 Misc.2d 847 (N.Y. City Ct., 1965) and Hess, *supra*.  If the default judgment was void, it is indisputable that the FDCPA prohibits certain actions regarding the void judgment.

Based on the above, Plaintiff's Complaint sets forth plausible causes of action based on

4

what Defendants, after <u>Hess</u>, *supra*, did know or should have known and what they should have done, what they did do, and what they did not do.

<u>COLLATERAL ESTOPPEL</u>

Defendants' Motion to Dismiss must be denied under the doctrine of collateral estoppel to the extent it seeks to dismiss the causes of action alleging violations of the FDCPA.  Defendants are collaterally estopped based upon the March 27, 2015 Order by the Honorable Joseph F. Bianco denying Defendants' Motion to Dismiss the third and fourth causes of action in the case of <u>Atwood v Cohen & Slamowitz</u>, Civil Action, File No. 2:14-cv-02973.  Judge Bianco's Order and the March 26, 2015 record referred to in this Order are annexed as Exhibit B.

In <u>Atwood</u>, *supra*, Judge Bianco found in response to Defendants' motion to dismiss that the third and fourth causes of action set forth a valid cause of action for a violation of the FDCPA.  The penultimate paragraphs of the third and fourth cause of action in Atwood, supra, respectively are paragraphs 77 and 83.  The Amended Complaint is annexed as Exhibit C.  As in this case, the crux of the Amended Complaint in <u>Atwood</u>, *supra* was Defendants' failure to conduct a meaningful review of its file before executing and delivering a consent to change attorney form to the new debt collector/attorney, and executing and delivering a consent to change attorney without telling the new debt collector/attorney or its client about the problem with Atwood's file.  As in this case, Defendants' failures in <u>Atwood</u>, *supra* resulted in Defendants' client transferring the file to a new debt collector/attorney, and the new debt collector/attorney taking action to enforce a judgment.  As in this case, in <u>Atwood</u>, *supra*, at the very least, Defendants' failures resulted in neither its client or the new debt collector/attorney conducting any meaningful review between the time they transferred/took over the file and the time they began to try to enforce the judgment.

*DEFENDANTS' ARGUMENTS SUPPORTING DISMISSAL IN THIS CASE AND IN <u>ATWOOD</u>, SUPRA*

In Atwood, *supra*, Judge Bianco at the invitation of Defendants via their Motion to Dismiss (Exhibit D) clearly decided the question of law as to whether or not an alleged violation of the FDCPA can be based on an alleged omission and/or misrepresentation associated with a Consent to Change Attorney in regard to a problem with Atwood's file.   In Atwood, *supra*, Defendants had four different chances to address the alleged violations of the FDCPA based on Defendants' alleged omissions and/or representations associated with the Consent to Change Attorney in regard to a problem with Atwood's file.   These four chances were as follows:  Defendants' Motion to Dismiss, Defendants' Reply (Exhibit E) to Plaintiff's Opposition (Exhibit F) to Defendants' Motion to Dismiss, the October 21, 2014 oral argument before Judge Bianco (Exhibit G), and Defendants' response (Exhibit H) to my aforementioned December 17, 2014 letter (Exhibit I) to Judge Bianco conveying new case law.  Judge Bianco clearly decided this question of law and clearly and expressly ruled that an alleged violation of the FDCPA can be based on an alleged omission and/or misrepresentation associated with a Consent to Change Attorney.

In this case, Defendant now through their Motion to Dismiss are asking a different court to decide the same exact question of law which it asked Judge Bianco to decide and which Judge Bianco did decide after Defendants had a full and fair opportunity to litigate this question of law. It makes no difference in regard to a collateral estoppel analysis that the underlying problem in this case which Defendants did not convey at any time in connection with the Consent to Change Attorney is different from the underlying problem in Atwood, *supra*.  This.  See Berlitz Schs. of Languages of Am., Inc. v. Everest House, 619 F.2d 211,215-16 (2d Cir. 1980); and Teevee Toons, Inc. v. MP3.com, Inc., 134 F. Supp. 2d 546, 546-47 (S.D.N.Y.2001).  This portion of Defendants' Motion to Dismiss is nothing more than an attempt to re-litigate the exact question of law which

Defendants litigated unsuccessfully before Judge Bianco.  Denying this portion of Defendants'
Motion to Dismiss based on collateral estoppel effectuates judicial economy by preventing
needless litigation.  George v. Kings Cnty. Hosp. Ctr. (E.D.N.Y., 2015, SEYBERT, District Judge).
See also Torres v. Dennis 10-CV-0803 (E.D.N.Y., 2013, SEYBERT, District Judge); Segreto v.
Town of Islip 12-CV-1961 (E.D.N.Y., 2013, SEYBERT, District Judge) ("By denying Plaintiffs'
request for a declaratory judgment, the state court necessarily determined that Plaintiffs do not own
Deer Lake."); and Northern Tankers (Cyprus) Ltd. v. Backstrom, 901 F.Supp. 72 (D. Conn., 1995).

MERITS OF FIRST AND FOURTH CAUSE OF ACTION ALLEGING FDCPA VIOLATIONS

Defendants' first two arguments for dismissal are as follows:  The execution of a Consent to
Change Attorney is not "collection activity" (pages 8-9 of Defendants' Memorandum of Law) and
"[a] consent to change attorney does nothing more than relieve the attorney from any further duties
of representation" (pages 9-10 of Defendants' Memorandum of Law).

Plaintiff's first cause of action alleges violations of various provisions of 15 USC 1692e and
1692f.  The words or phrase "collection activity" appear in neither 15 USC 1692e nor 1692f.

The first sentence of 15 USC 1692e reads as follows:  "A debt collector may not use any
false, deceptive, or misleading representation or means in connection with the collection of any
debt."   "[I]n connection with" are the key words in this sentence as regards Defendants first
argument regarding a lack of "collection activity"  As explained below, "in connection with" is a
broad term which extends beyond "collection activity" and which does include the execution of a
Consent to Change Attorney.

Neither the United States Supreme Court nor the Second Circuit Court of Appeals has
discussed the meaning of "in connection with" in 15 USC 1692e.  The best indications of how the
Second Circuit, if not also the United States Supreme Court may determine the meaning of "in

connection with" in 15 USC 1692e are as follows:

In Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005), affrm'd 126 S. Ct. 2121 (2006), 126 S.Ct. 2121, 165 L.Ed 2d 131, 547 US 677 (2006)the Second Circuit held that "in connect with" is synonymous with the phrases "related to", "associated with", and "with respect to".

On February 10, 2015, in Sykes v. Mel S. Harris & Assocs. LLC (2nd Cir., 2015) the Second Circuit explained the following:  "We have not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)."  The Second Circuit found that the lower court did not abuse its discretion in certifying two different classes based on allegations of violations of 15 U.S.C. § 1692e.

Just today, the Eleventh Circuit Court of Appeals issued a decision expressly holding that the communication does not have to be made directly to a consumer to violate 1692e if the communication is in connection with the collection of a debt.  Nedzad Miljkovic v. Shafritz & Dinkin, P.A. and Mitchell A. Dinkin, 14-13715, D.C. Docket No. 8:14-cv-00635-VMC-TBM (June 30, 2015).

Both the Second Circuit and the Supreme Court have made crystal clear the purpose of the FDCPA and the resulting manner in which its provisions, especially undefined provisions, must be interpreted and applied by the courts:  "Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated[ ]" [; and] "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices." "  Vincent v. Money Store, 736 F.3d 88 (2nd Cir., 2013).  The FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, inter alia, false, deceptive, or unfair debt-collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich

LPA, 559 U.S. 573, 587, 130 S. Ct. 1605, 1615 (2010).

Last August, the Honorable William H. Pauley, III of the SDNY in Tocco v Real Time Resolutions, Inc. 14cv810 (August 2014, SDNY, Hon. William H. Pauley, III) relied on both Empire, *supra* and Vincent, *supra* in his decision holding that "initial communication" under the FDCPA must be interpreted broadly to effectuate the FDCPa's purpose.  The court in Tocco, *supra* found that a letter still was "in connection with the collection of any debt" even though the letter was required to be sent pursuant to RESPA and did not explicitly demand payment.

Defendants arguments in this case concerning the nature of a Consent to Change Attorney form are no different from the defendants' argument in Tocco, *supra* regarding the RESPA letter it was required to send.  See also the use of the Second Circuit's decision in Empire, *supra* by the court in Headley-Ombler v. Holder (E.D.N.Y., 2013), 12-CV-2631 (WFK) (LB) to determine the meaning of "in connection with" in Section 1503(a) of Title 8.

Even if this court does not find that collateral estoppel bars this aspect of Defendants' Motion to Dismiss, Judge Bianco's decision in Atwood, *supra* still is based on sound reasoning related to the indisputable and crystal clear the purpose of the FDCPA and what both the U.S. Supreme Court and the Second Circuit have repeatedly held regarding the resulting manner in which its provisions, especially undefined provisions, must be interpreted and applied by the courts.

Plaintiff asks this court to adopt or at least agree with the findings by Judge Bianco in Atwood, *supra* set forth in the following places in the Transcript of March 26, 2015 Oral Decision on Defendants' Motion to Dismiss:  p. 12, lines 8-10, p. 13, lines 4-11, and p. 13, lines 22-25 through p. 14, line 1.  Based on the sections of Sykes, *supra* discussed above, Judge Bianco's decision certainly is in line with the Second Circuit's opinion about the plausibility of a finding such as Judge Bianco's.  Judge Bianco's decision also is in line with the manner in which the Second

Circuit and the U.S. Supreme Court, in the above cited cases, have told the court's to interpret the FDCPA and the Second Circuit's discussion in Empire HealthChoice Assur., *supra* of the general ordinary meaning of the words "in connect with".

Judge Bianco in Atwood, *supra* based his decision in large part on two cases which he found applicable to the facts at issue in Atwood, *supra*.   Again, as in Atwood, *supra*, the allegations in this case concern violations of the FDCPA resulting from actions or omissions in connection with a Consent to Change Attorney.   These two cases relied on by Judge Bianco were Plummer v. Atlantic Credit and Finance, Inc., (ph) 2014 W.L. 6969546 (S.D.N.Y. December 8th, 2014) and Magrin v. Unifund CCR Partners, Inc., 2002 WL 31804268, 52 Fed.Appx. 938 (9th Cir. 2002), certiorari denied 538 U.S. 980 (2003).   The fact that Plaintiff's case involves one debt collector signing and delivering a Consent To Change Attorney or having a debt buyer take back a file from a debt collector rather than a sale, transfer or assignment is a distinction without a difference.   Both instances involve a second debt collector taking over the attempt to collect the debt from the first debt collector.   Both instances involve the first debt collector knowing that another debt collector was going to take over attempting to collect the debt.   Both instances involve the first debt collector not telling the second debt collector, directly or through their mutual client, about problems which occurred during the first attempt to collect the debt.   Both instances involve these omissions resulting in actions by the second debt collector that resulted in a violation of the consumer's rights under the FDCPA.

The FDCPA indisputably has more than one purpose; and one of its purposes if not its main purpose is to "eliminate abusive debt collection practices by debt collectors".   Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)).   See also Plummer v. Atlantic Credit and Finance, Inc., (ph) 2014 W.L. 6969546 (S.D.N.Y. December 8th, 2014).

Defendants do not argue that the alleged misrepresentations, in the form of omissions or affirmative statements, do not constitute "abusive debt collection practices" by a "debt collector". First, there is no dispute and Defendants do not argue that they, Eltman, Eltman & Cooper (the attorneys to which the file was transferred), and their client are anything other than "debt collectors". Second, for Defendants to argue that the alleged misrepresentations, in the form of omissions or affirmative statements, do not constitute "abusive debt collection practices" by a "debt collector" would require them to set forth a reason why it is not an "abusive debt collection practices" when a "debt collector" (Defendants) fails to inform other debt collectors (Eltman, Eltman & Cooper (the attorneys to which the file was transferred), and their client) whom they know will try to enforce a judgment that the judgment against the consumer is or may be void.

Defendants also argue that "[a] consent to change attorney does nothing more than relieve the attorney from any further duties of representation" (pages 9-10 of Defendants' Memorandum of Law). In <u>Farage v Ehrenberg</u>, 2014 NY Slip Op 07977 (2d Dept. November 19, 2014), a New York State appellate court, the Appellate Division, Second Department (the Department which governs Defendants based on Defendants' location), ruled that the statute of limitations for a malpractice claim against an attorney starts to run on the date of the Consent To Change Attorney unless there has been a prior termination of the attorney-client relationship in a different manner. It certainly follows that if a malpractice claim against an attorney can start to run on the date of the Consent To Change Attorney then an attorney maintains certain obligations regarding the case through and including its signing and delivering the Consent To Change Attorney. An attorney also has a continuing duty to assess the legal and factual basis of a claim. <u>Yankee Lake Preservation Association, Inc. v. Stein</u>, 68 A.D.3d 1603, 2009 NY Slip Op 10024, 893 N.Y.S.2d 300 (N.Y. App.

Div., 2009).

Lastly, while Defendants are attorneys, it is undisputed that for the purposes of this case, there obligations are defined by them being "debt collectors" subject to the FDCPA.  This makes their argument about its duties as an attorney irrelevant to this case.  See Romea v. Heiberger & Associates, 163 F.3d 111 (C.A.2 (N.Y.), 1998):

The bottom line is, for the reasons explained above based on the above quoted portions of Hess, *supra*, there is no other conclusion to draw or at least it is reasonable to draw the conclusion that Hess, *supra*, revealed a problem with the courts in which Defendants were choosing to sue consumers such as Plaintiff and revealed that Defendants had been misinterpreting the law which determined the appropriate court in which to sue a consumer if Defendants were going to choose to sue a consumer in a City Court rather than in a Supreme Court or Justice Court.

If the default judgment against Plaintiff was void and Hess, *supra* should have lead Defendants to this conclusion, then Plaintiff has alleged a violation of 15 USC 1692e and/or 1692e(5).  This case is no different than Coble v Cohen & Slamowitz, LLP, 824 F.Supp.2d 568 (S.D.N.Y., 2011).  There is no difference between the omission in Coble of "failing to investigate the fraudulent practices of its process service company" and the omissions alleged in this case including the failure to take any action to review Plaintiff's file in light of Hess,  *supra*. The omissions in both cases resulted in the improper continuation of debt collection efforts and the improper attempted enforcement of a judgment.

In Currier v. First Resolution Inv. Corp., No. 13-5943 (6th Cir., 2014), the alleged FDCPA violation resulted from a failure to eliminate a judgment lien which the defendants knew was invalid.  Based on the reasoning in Currier, *supra*, signing and delivering a Consent To Change Attorney to a second debt collector knowing that it would continue the debt collection

attempts and concealing information that would have informed the second debt collector and/or their client of a problem with the second dent collector attempting to collect the debt through the State Action is a violation of the FDCPA as alleged in the First and Fourth Cause of Action.

A Consent to Change Attorney form is meant to and intended to be filed with a court. It is required to be filed with a court to change the attorney of record on file with the court, allow the new attorney to represent the client in court, and allow the new attorney to sign any document such as an income execution. Currier, *supra* specifically states that court filings constitute a violation of 1692e(5); and therefore, if this court agrees with Currier, *supra*, it is directly on point.

Defendants' arguments regarding Hess, *supra* amount to an argument about the legal meaning of Hess, *supra*. If the default judgment against Plaintiff was void and Hess, *supra* should have lead Defendants to this conclusion but did not based on Defendants' mistaken interpretation of Hess, *supra*, Defendants' arguments regarding the lack of any affirmative obligations or duties on Defendants resulting from Hess, *supra*, really is nothing more than an incorrect bona fide error defense. A debt collector cannot escape liability under the bona fide error defense due to mistake of law, that is, a violation of FDCPA resulting from a debt collector's incorrect interpretation of the legal requirements of the FDCPA. Jerman, *supra*.

The FDCPA is a strict liability statute; and a debt collector's intent has no bearing on whether a violation occurred. Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir.1996); and Hess, *supra*. If Plaintiff is correct regarding Hess, *supra*, Defendants then can escape FDCPA liability only if its actions and omissions regarding Plaintiff amounted to a bona fide error defense. Puglisi v. Debt Recovery Solutions, LLC, 822 F.Supp.2d 218 (E.D.N.Y., 2011).

The Complaint alleges that Defendants took no required actions regarding the default

judgment.  Since the FDCPA is a strict liability statute, if the default judgment against Plaintiff was void, not based on Hess, *supra* but based on City Court Act 213 and Plaintiff's non-waiver of the lack of jurisdiction under City Court Act 213, then Plaintiff has alleged a violation of 15 USC 1692e and/or 1692e(5) even if Plaintiff is incorrect correct regarding Hess, *supra*.

Finally, the Complaint alleges that Defendants transferred Plaintiff's file to a new debt collector without conducting any prior meaningful review.  It is clear that 15 USC 1692e requires a debt collector, subject to certain exceptions, to conduct a meaningful attorney review before taking action such as sending a 1692g (a) initial communication to a consumer.  Miller v. Wolpoff & Abramson, 321 F.3d 292, 298 (2d Cir.2003).  There can be no difference between the need to conduct a meaningful attorney review before sending a 1692g (a) letter and the need to do so prior to signing and approving a state court lawsuit.

It simply would be contrary to the broad remedial purposes of the FDCPA to not require a debt collector who has been handling a consumer's file for numerous years not to conduct a meaningful review of the consumer's file before executing a Consent to Change Attorney form in light of all the representations and consequences associated with one debt collector executing and delivering to a new debt collector a Consent to Change Attorney.  See Gabriele v. Am. Home Mortg. Servicing, Inc. 503 Fed. Appx. 89 (2nd Cir., 2012) (Summary Order) ("1692e "provides a non-exhaustive list of example violations".).

Since per the text, 1692f regulates "means to collect or attempt to collect any debt" as opposed to 1692e which regulates actions or omissions "in connection with" an attempt to collect a debt, Plaintiff will not be opposing Defendants' request to dismiss the portions of the Complaint alleging a violation of 1692f.

**SECOND CAUSE OF ACTION-NY GBL 349**

As regarding the "consumer oriented" prong of a NY GBL 349 claim, Defendants first argue that subsections (a)-(d) of paragraph 44 of the Complaint are "a string of unsupported, conclusory allegations".  Defendants Memorandum of Law, p. 15 (last sentence of the first full paragraph).  There is no rule or case which requires a Complaint to include proof or factual or documentary support.  The Rules of Civil Procedure establish a claim-pleading system, not a fact-pleading system.  See, e.g., Erickson v Pardus, 551 U.S. 89 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell All. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

"CONSUMER-ORIENTED"

Just 4 months ago, the Second Circuit in Sykes v. Mel S. Harris & Assocs. LLC (2nd Cir., 2015) explained that the "consumer oriented" element of NY GBL 349 "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" Id.(alteration in original) (quoting Oswego Laborers' Local 214 Pension Fund, 623 N.Y.S. 2d at 533)." Sykes, supra.  In March, in Mayfield v. Asta Funding, Inc. 14-CV-2591 (S.D.N.Y., 2015, Loretta A. Preska, Chief, USDJ), Judge Preska denied the defendants motion to dismiss Plaintiffs' NY GBL 349 claims based on the defendants argument that the deceptive acts were not consumer-oriented.  Judge Preska rejected the argument that NY GBL 349 required the deceptive acts to be directed directly at consumers rather than third-parties such as courts.  Judge Preska also explained why the conduct was "consumer-oriented":  "Defendants' deceptive conduct is consumer-oriented

and harmful to the public interest in that consumers are forced to respond to the fraudulent lawsuits or else face the penalty of wrongful default judgments, garnished wages, restrained bank accounts and impaired credit opportunities. Plaintiffs have sufficiently alleged deceptive, consumer-oriented conduct that harms Plaintiffs and the public interest in violation of the statute"

While the alleged deceptive act or practice in this case is different from the alleged deceptive act or practice in Sykes, *supra* and Mayfield, *supra*, in all three cases, the alleged deceptive act or practice involved documents submitted/communications to a party other than the consumer which resulted in actions against consumers to enforce improper and/or void default judgments.  In other words, the effect on the consumer who brought the lawsuit as well as on numerous other similar consumers is the same in all three cases.  For the same reasons the conduct in Sykes, *supra* and Mayfield, *supra* is "consumer oriented", the alleged conduct in this case is "consumer oriented".

Taken as true and construed in a manner most favorable to Plaintiff for the purpose of deciding this motion, these allegations, that Defendants actions potentially effected tens of thousands of consumers all of whom as a result of Defendants' improper actions were subject to debt collection activity resulting from void default judgments, state a claim to relief under NY GBL 349 that is plausible on its face.  See Sykes, *supra* and Mayfield, *supra*.  Plaintiff's Complaint indisputably alleges improper actions by Defendants that is far beyond an issue unique only to the relationship between Defendants and Plaintiff and that, if taken as true, have a broad impact on consumers at large.  See Galloo Ile-De-France v Lancaster International, LLC 1:14-cv-00629-MAD-CFH (NDNY, 6/10/15) and Schwartzco Enters. LLC v. TMH Mgmt., LLC 14-CV-1082 (ADS)(GRB) (E.D.N.Y., 2014).

Defendants next argue that the allegation that "hundreds of thousands" of lawsuits were

"brought in an improper venue" is based on Plaintiff's reliance on <u>Hess</u>, supra.  For the reasons set forth above regarding the rules of pleading and based on the aforementioned holdings regarding the "consumer-oriented" element, the allegation that "hundreds of thousands" of lawsuits were "brought in an improper venue" can stand alone without any reference to <u>Hess</u>, supra especially in light of the allegations regarding Defendants suing Plaintiff himself in an improper venue.

To the extent that the allegation that "hundreds of thousands" of lawsuits were "brought in an improper venue" does rely on <u>Hess</u>, supra, it does so properly for all the reasons laid out above regarding the meaning or at least the reasonable effect and obligations resulting from <u>Hess</u>, supra.  If nothing else, the Second Cause of Action could be amended either to eliminate any reliance on <u>Hess</u>, supra and otherwise support or clarify the basis for the allegation at issue or amended to explain in detail the basis for relying on <u>Hess</u>, supra as discussed above.

<u>MISLEADING OR DECEPTIVE</u>

Defendants' Motion to Dismiss fails to discuss or complain about the allegations in paragraphs 40-43 of the Complaint.  These allegations are far beyond "boilerplate legal conclusions".  These allegations, taken as true and construed in a manner most favorable to Plaintiff for the purpose of deciding this motion, state a claim for relief that is plausible on its face as regards this element of a NY GBL 349 claim.

Based on the above-explained virtually identical nature of the actions and omissions at issue in this case and in <u>Atwood</u>, *supra*, Judge Bianco's Order and the reasons for his Order either bar Defendants from arguing that the actions and omissions in this case are not misleading or deceptive or certainly has substantial relevance to this court's decision regarding this element of a NY GBL 349 claim.  See Transcript of March 26, 2015 Oral Decision on Defendants' Motion to Dismiss, p. 11, lines 5-8.   If the omissions or affirmative statements made by Defendants to

17

someone other than the debtor via the Consent to Change Attorney are deceptive or misleading under the FDCPA provision which expressly prohibits the use of deceptive or misleading misrepresentation, there can be no reason why they would not be considered deceptive or misleading in violation of NY GBL 349.  The "in the conduct of any business" language in NY GBL 349 is much broader than the "in connection with the collection of any debt" language of in the above FDCPA provision at issue in <u>Atwood</u>, supra.   I do not see how an attorney can argue that executing and delivering a Consent to Change Attorney is anything other than in the conduct of an attorney's business.

<u>INJURED AS A RESULT OF THE DECEPTIVE ACT</u>

In a conclusory fashion without even discussing the actual allegations in paragraph 45 of the Complaint, Defendants argue that "Plaintiff *fails to plead any facts* to establish that plaintiff sustained damages proximately resulting from Defendants' execution of a Change of Attorney form."

Prior to the allegations in paragraph 45 regarding Plaintiff's injuries, the Complaint alleges the existence of a default judgment that was void and should never have been enforced but most likely was enforced only because of the deceptive act or practice of Defendants set forth throughout the Complaint and in particular in paragraphs 39-43.  After these allegations regarding the deceptive act or practice, paragraph 45 of the Complaint alleges injuries to Plaintiff.      It      is well recognized by the steps taken and laws passed by state and federal governments that consumers such as Plaintiff actually are injured by illegal debt collection tactics such as the one at issue.   This is evidenced by among other things the statutory and actual damages, such as emotional distress damages, awarded under the FDCPA.  NY GBL 349 does not even require the actual harm to be pecuniary to impose compensatory damages.   <u>Oswego Laborers' Local</u>

214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25-26 (1995).  See also Fritz v Resurgent Capital Services, LP, 995 F. Supp. 2d 163, 174 (E.D.N.Y. 2013) ("time spent" defending deceptive lawsuits sufficient under GBL § 349) (quoted with approval in Mayfield, supra.).  Paragraph 45 of the Complaint clearly sets forth allegations of injuries that Plaintiff suffered as a direct result of Defendants' alleged deceptive act or practice.

**THIRD CAUSE OF ACTION-NY JUDICIARY LAW 487**

Defendants' assertion on pages 17 and 18 of their Memorandum of Law regarding the legal standard for establishing a claim under Judiciary Law 487 is wrong under New York State case law.  New York State case law is that in addition and as an alternative to the requirement of a "chronic and extreme pattern of legal delinquency" cited by Defendants, an attorney also can be found to have violated Judiciary Law 487 as a result of "a deceit that reaches the level of egregious conduct".  Savitt v Greenberg Traurig, LLP 2015 NY Slip Op 02003 (1st Dept. 2015). See also Papa v. 24 Caryl Avenue Realty Co., 23 A.D.3d 361, 804 N.Y.S.2d 112, 2005 NY Slip Op 8298 (N.Y. App. Div., 2005).  The most recent clear illustration of this legal standard for a violation of Judiciary Law 487 is the case of Mazel 315 W. 35th LLC v 315 W. 35th Assoc. LLC 2014 NY Slip Op 06252 (2nd Dept. 2014).

Just last year, the New York Court of Appeals in Melcher v. Greenberg Traurig, LLP, 2014 NY Slip Op 2213, 11 N.E.3d 174, 23 N.Y.3d 10, 988 N.Y.S.2d 101 (N.Y., 2014) expressly stated that "Judiciary Law § 487 exposes an attorney who '[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party' ".  Of course, the key fact is that twice is one sentence explaining Judiciary Law § 487, the New York Court of Appeals used the word "any".  The New York Court of Appeals' use of the word "any" cannot be reconciled and contradicts any alleged requirement that there must be a "chronic and extreme

pattern of legal delinquency".  See also <u>Amalfitano v. Rosenberg</u>, 12 N.Y.3d 8 (2009).  In <u>Amalfitano</u>, *supra*, the violation of Judiciary Law § 487 at issue was based on an attorney's false allegation in a complaint (12 N.Y.3d at 11); and the New York Court of Appeals was answering two certified questions from the Second Circuit regarding Judiciary Law § 487.  The first question was "[c]an a successful lawsuit for treble damages brought under N.Y. Jud. Law § 487 be based on an attempted but unsuccessful deceit?" <u>Amalfitano</u>, *supra*, 12 N.Y.3d at 11. The New York Court of Appeals answered this question in the affirmative and summed up its reasoning as being based on the fact that "[t]he operative language at issue—"guilty of any deceit"— focuses on the attorney's intent to deceive, not the deceit's success." <u>Amalfitano</u>, *supra*, 12 N.Y.3d at 14.

As Defendants' Motion to Dismiss illustrates, there are cases which express that a violation of Judiciary Law 487 requires a "chronic and extreme pattern of legal delinquency".  If <u>Melcher</u>, *supra*, and <u>Amalfitano</u>, *supra*, make clear that any deceit can violate Judiciary Law 487, what is the reason for certain courts seeming to hold that a violation of Judiciary Law 487 requires a "chronic and extreme pattern of legal delinquency"?  The only explanation is that Judiciary Law 487 requires that an attorney have intent to deceive.  The deception on the part of the attorney has to be intentional.  The reference by some courts to the need to show a "chronic and extreme pattern of legal delinquency" must be based on a belief by these courts that intent is proven by a "chronic and extreme pattern of legal delinquency".  This certainly can be one means of proving intent; but it cannot be the only means of proving intent.  At the pleading stage however, there is no need to prove intent.  The existence of intent only has to be shown to be plausible based on the face of the Complaint.

Whether New York law requires a "chronic and extreme pattern of legal delinquency" or

the existence of intent only has to be shown to be plausible based on the face of the Complaint, the Complaint certainly alleges facts which set forth a claim under Judiciary Law 487 that is plausible on its face.  Between the paragraphs in the third cause of action itself, the allegations in the Class Allegations section of the Complaint, and the Complaint taken as a whole, i.e. the allegations in the third cause of action alleging "consumer-oriented" activity based on the alleged volume of similar actions and omissions, the Complaint alleges both an intent to deceive and a "chronic and extreme pattern of legal delinquency".  It is clear from the Complaint that what occurred in regard to Plaintiff was but one instance of an extremely large volume of similar conduct and was intentional.  See Mayfield, *supra*.

Defendants alleged actions and omissions were egregious.  Dictionaries define egregious as  "extraordinary in some bad way"; "glaring"; "flagrant";   "conspicuous"; and  "especially". Plaintiff already has shown above how the alleged actions and omissions by Defendants constitute a violation of the FDCPA and NY GBL 349.  The FDCPA prohibits abusive debt collection practices.  Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) and NY GBL 349 prohibits deceptive acts by businesses which have a broad impact on consumers.  It certainly follows that actions and omissions which are considered to be an abusive debt collection practice and amount to a deception that has a broad impact on consumers are also actions and omissions which are egregious.  This is especially true in light of the fact that Judiciary Law 487 applies solely to attorneys who under Judiciary Law 487 are held to a higher standard than non-attorneys.   The  Complaint  alleges  and  it  is  indisputable  that  the  purpose  of  a  debt collector/attorney being asked by its client or another debt collector/attorney to sign and return a Consent to Change Attorney is to allow the new debt collector/attorney to take action to collect the debt or enforce a judgment.  The Complaint alleges and it is indisputable that a Consent to

21

Change Attorney sent from one debt collector/attorney to another amounts to a representation from the former to the later that there are no issues with the file that would prevent the later from proceeding to collect the debt or in this case enforce the judgment.  When the former knows or should know that there is or may be a problem that should warrant against the new debt collector/attorney taking any action, the former turns a blind eye and allows the new debt collector/attorney to think otherwise, and this results in or contributes to a consumer being subject to a wage garnishment based on an invalid judgment, an egregious act or omission has occurred on the part of the former.

Certainly, if the court deemed it necessary, the Complaint could be amended to clarify further that what occurred in regard to Plaintiff was but one instance of an extremely large volume of similar conduct, was intentional, and was egregious.

**DEFENDANTS' REQUEST TO TRANSFER THIS CASE TO THE WESTERN DISTRICT SHOULD BE DENIED**

About three months ago, your Honor in the case of <u>Abramowitz v. Tropicana Atl. City Corp.</u> (E.D.N.Y., 2015) 14-cv-2064 the standards used to determine a request to transfer a case to a different venue.  Most importantly, Defendants' discussion of the standards for a change of venue omitted the fact that Defendants have the burden to make out a " 'strong case for transfer'' ' and " 'the balance of factors [must tip [ ] decidedly in favor of a transfer'' ' before a court should consider disturbing Plaintiff's forum choice.  <u>Abramowitz</u>, *supra*.  Defendants also omitted the element of "the relative means of the parties".   Defendants do not have a strong case for transfer and the balance of factors actually tip in favor of leaving this case in the Eastern District.

<u>LOCUS OF OPERATIVE FACTS AND RELATIVE EASE OF ACCESS TO SOURCES OF PROOF</u>

Defendants claim on page 21 of their Memorandum of Law that since "Plaintiff's claims are

directly related to the Sam Collection Action, the locus of the operative facts is central to the geographic area embraced by the Western District.  Defendants' Motion to Dismiss clearly argues that this case is about whether or not Hess, *supra* imposed any duties upon Defendants.  If this is a central question in this case, the locus of operative facts either has no relation to the Western District or has a much greater relationship to the Eastern District of New York.  The existence and scope of duties created by Hess, *supra* turn on the interpretation and meaning of the decision in Hess, *supra* issued by the Second Circuit.  These are pure legal questions and therefore have no particular connection to any particular district.   Taken a step further, this case is also substantially about what Defendants knew or should have known in light of the decision in in Hess, *supra* and the meaningful review that Defendants should have been done and/or the meaningful review Defendants conducted.   Therefore, the locus of operative facts lies in substantial part with Defendants themselves who all are located in the Eastern District of New York in Woodbury, NY on Long Island.

Assuming Defendants had certain obligations to communicate to its client or the new debt collector/attorney, the question then arises as to what information its client or the new debt collector/attorney received from Defendants.  Defendants' client is based in California and the new debt collector/attorney, Eltman, Eltman & Cooper is located in Manhattan.

<u>RELATIVE MEANS OF THE PARTIES/PLAINTIFF'S CHOICE OF VENUE</u>

I am a sole practitioner with a small practice.  I am bearing all the costs associated with this case.  I will get reimbursed for costs only upon prevailing or settling.  I will incur greater costs if this case is transferred to the Western District in light of expenses associated with air fare and hotels.  I will not have these costs if the case remains in the Eastern District.  I will lose a substantial amount of working hours if I need to travel to and from Buffalo for this case.  Plaintiff and I chose

the Eastern District in large part because we believed that most of the time and effort involved

would be on my part.

<u>CONVENIENCE OF THE WITNESSES/PARTIES</u>

It is more convenient for a representative from the new debt collector/attorney, Eltman,

Eltman & Cooper, located in Manhattan, to appear in the Eastern District.  Defendants' client is

based in California.  Defendants' attorneys are located in Manhattan.  The communications between

Defendants and its client and between Defendants and the new debt collector/attorney are not at

issue in the action pending in the Western District.  A transfer of this case to the Western District

would not necessarily and is unlikely to result in the court appearances for Defendants themselves

or employees of Defendants in both cases always to be scheduled on the same date.  It is just as if

not more likely that Defendants themselves or employees of Defendants would have to travel from

Long Island to Buffalo to testify for each case on separate dates.

<u>ATTENDANCE OF WITNESSES</u>

If the new debt collector/attorney located in Manhattan is an unwilling witness, it will be the

federal court in the Southern District which must entertain a proceeding to compel compliance with

a subpoena.  See <u>JMC Restaurant Holdings, LLC, et. al. v Marcelo Pevida</u> 1:14-cv-06157-WFK-

VMS (EDNY, 2015).

<u>INTEREST OF JUSTICE</u>

The causes of action in the Western District action alleges that Defendants violated the

FDCPA's venue provision, 15 USC 1692i, by filing the 2007 lawsuit against Plaintiff in the

Dunkirk City Court.  The Complaint (Exhibit J) in the Western District action does not allege a

violation of any other provision of the FDCPA, and does not allege a violation of NY GBL 349 or

NY Jud. Law 487.

In the current Western District action, Defendants already lost their motion to dismiss and have not denied that it sued Plaintiff in the wrong venue in violation of the FDCPA. Defendants' only asserted defense in the Western District action is their belief that several years before Plaintiff sued it under the FDCPA Plaintiff knew about the Dunkirk City Court Action which resulted in the FDCPA venue violation and therefore the lawsuit was filed beyond the FDCPA's statute of limitations. In order to give this court the best picture of the Western District action and the clear differences between that action and this action, attached is Senior Judge John T. Curtin's decision denying Defendants' Motion to Dismiss (Exhibit K).

Finally, the current Western District action is pending before Senior Judge John T. Curtin. I along with opposing counsel were advised by Judge Curtin's clerk that Judge Curtin will not be able to handle any summary judgment motion or trial; and therefore the case eventually will have to be re-assigned. Therefore, a transfer of this case to the Western District would not result in a transfer of this case to the same judge currently handling the Western District case.

Dated:          June 30, 2015

/s/  Mitchell L. Pashkin
Mitchell L. Pashkin (MP 9016)
Attorney For Plaintiff
775 Park Avenue, Suite 255
Huntington, NY  11743
(631) 629-7709